UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
ADAM COULIBALY,

|  |  |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| -against- | 12 CV 4760 (CBA) (CLP) |

MILLENNIUM SUPER CAR WASH,
INC.,

Defendant.
-------------------------------------------------x

On September 24, 2012, plaintiff Adam Coulibaly ("Coulibaly" or "plaintiff") filed this action against defendant Millennium Super Car Wash, Inc. ("Millennium" or "defendant"), seeking unpaid overtime and minimum wages, pre-judgment interest, and liquidated damages, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. (2006) ("FLSA"), and the New York Labor Law §§ 650, et seq. ("NYLL"). (Compl.[1] ¶¶ 19-35, 40-42). Plaintiff also seeks compensation for defendant's alleged violations of the "spread of hours" regulations, pursuant to the NYLL. (Id. ¶¶ 36-39).

On March 15, 2013, this matter was referred by the Honorable Carol B. Amon to the undersigned to conduct an inquest and to issue a Report and Recommendation as to liability and damages. On May 8, 2013, the Court conducted an inquest hearing, at which defendant failed to appear. Based upon the documentation submitted in connection with plaintiff's motion for a default judgment and upon the evidence presented at the inquest hearing, the Court respectfully recommends that plaintiff be awarded $50,381.16, representing unpaid overtime, minimum

---

[1] Citations to "Compl." refer to the plaintiff's Complaint, filed on September 24, 2012.

wage, spread of hours, liquidated damages, and pre-judgment interest.

## FACTUAL BACKGROUND

Plaintiff, a resident of Brooklyn, New York, alleges that he was employed by defendant to change oil filters from 2009 until June 18, 2012. (Id. ¶¶ 5-7). Defendant is a car wash with locations in Brooklyn and Manhattan. (Siegel Aff.[2] at 1). Plaintiff alleges that during the time he worked for defendant, he worked approximately 62 hours per week and was required to work shifts exceeding ten hours per day at least one day per week. (Compl. ¶¶ 10, 36; Tr.[3] at 5). Plaintiff further asserts that during his time as an employee, he was paid in cash and did not receive time off for holidays or for any other reason. (Tr. at 7-9). Plaintiff alleges that he was paid $6.00 per hour for the duration of his employment, irrespective of how many hours he worked. (Compl. ¶ 11; Tr. at 6). Although plaintiff initially claimed at the inquest that he did not receive tips during his employment, he stated later at the hearing that he did, in fact, sometimes receive tips. (Tr. at 8).

Plaintiff asserts that defendant willfully failed to pay him the minimum wage and overtime required by state and federal law. (Compl. ¶¶ 12-13, 18). Plaintiff also claims that defendant violated the NYLL and New York State Department of Labor regulations by failing to compensate him with an additional hour's pay at the minimum wage rate on each such occasion where he worked a shift exceeding ten hours (i.e., a "spread of hours" wage). (Id. ¶ 15).

---

[2] Citations to "Siegel Aff." refer to the Affidavit of Service of Jacqueline Siegel, filed on March 15, 2013.

[3] Citations to "Tr." refer to Transcript of Civil Cause for Inquest Hearing, held on May 8, 2013.

2

On September 24, 2012, plaintiff filed this action; plaintiff served Millennium with the Complaint and Summons on September 28, 2012. (Roy Aff.[4] at 1). Thereafter, defendant failed to appear and, accordingly, on January 23, 2013, the Clerk of Court filed an Entry of Default against defendant. On March 15, 2013, plaintiff filed a Motion for Default Judgment and later that day, Judge Amon referred the Motion for Default Judgment to the undersigned for a Report and Recommendation. On May 8, 2013, the Court conducted an inquest hearing as to damages, at which defendant failed to appear.

Based on defendant's failure to appear and defend itself in this action, the Court has reviewed the plaintiff's submissions and respectfully recommends that plaintiff be awarded damages in the amount of $50,381.16, plus interest that accrues between the date of this Report & Recommendation and the date that judgment is entered, as well as any post-judgment interest that accrues.

## DISCUSSION

### A. Default Judgment Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-part procedure for entering a default judgment. See Fed. R. Civ. P. 55(b)(2); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993); Hirsch v.

---

[4] Citations to "Roy Aff." refer to the Affidavit of Service of Angela Roy, filed on December 11, 2012.

Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).

Pursuant to Rule 55(a), the court clerk first enters a default by noting the defaulting party's

failure to respond or appear. Enron Oil Corp. v. Diakuhara, 10 F.3d at 95. If the defaulting party

then fails to appear and successfully vacate the default pursuant to Rule 55(c), the court may

enter a default judgment. Id. Where the damages sought requires a judicial finding, a default

judgment may be entered once the court has determined the question of damages. See Fed. R.

Civ. P. 55(b).

    In deciding whether a default judgment should be entered, the Second Circuit has

cautioned that a default judgment is an extreme remedy that "must remain a weapon of last,

rather than first, resort." Prosperity Partners, Inc. v. Bonilla, 249 F. App'x 910, 912 (2d Cir.

2007) (quoting Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981)) (internal quotation marks

omitted). While the Second Circuit has recognized the pressure on district courts "to dispose of

cases that . . . delay and clog . . . [their] calendar[s]," district courts are instructed to "maintain a

balance between clearing [their] calendars and affording litigants a reasonable chance to be

heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95–96. Thus, in light of the "oft-stated

preference for resolving disputes on the merits," defaults are "generally disfavored" and doubts

should be resolved in favor of the defaulting party. Id. Indeed, Rule 55(b) "states that a

judgment by default 'may' be entered under specified circumstances, not that it must." Ferrara v.

Stallone Testing Labs., Inc., No. 10 CV 901, 2011 WL 3847123, at *2 (E.D.N.Y. Aug. 5, 2011)

(stating that where the court enters a default judgment, it is required to "supervise [that entry] . . .

with extreme care to avoid [a] miscarriage[] of justice" (quoting Erwin DeMarino Trucking Co.

v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993))). Accordingly, plaintiff is not entitled to a

4

default judgment as a matter of right, simply because a defendant is in default. Id.

The court has significant discretion and may consider a number of factors in deciding whether to grant a default judgment, including: "(1) whether the grounds for default are clearly established; (2) whether claims were pleaded in the complaint, thereby placing the defendant on notice; and (3) the amount of money potentially involved — the more money involved, the less justification for entering the default judgment." See Friedman v. Sharinn & Lipshie, P.C., No. 12 CV 3452, 2013 WL 1873302, at *3 (E.D.N.Y. Mar. 28, 2013) (internal citation omitted); Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (quoting Charles A. Wright, et al., 10 Fed. Practice and Procedure § 2685, at 425-26 (2d ed. 1983)).

Additionally, when determining whether a default judgment is appropriate, a court may "consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and whether the judgment might have a harsh effect on the defendant." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012). A default is inappropriate where plaintiff's allegations fail to establish defendant's liability as a matter of law. See Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

In this case, it is undisputed that the defendant is in default since it has failed to challenge the Court's entry of default. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that defendant's default was "crystal clear" as evidenced by its failure to oppose the plaintiff's motion for a default judgment). Further, the amount of money involved in this case is not great; therefore, unlike cases with millions of dollars potentially at stake, here the Court does

5

not have to hesitate before entering default judgment. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (declining to enter default judgment, as plaintiff's request for damages ran "well into the millions of dollars," and giving defendant an opportunity to contest the default judgment). In this case, since the matter does not involve a particularly large sum of money and because defendant has had numerous opportunities to defend itself and has failed to contest the default, there is no compelling reason to delay further.

When a defendant defaults, the defendant is deemed to have admitted every well-pleaded allegation of the complaint, "except those relating to damages." See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Wing v. East River Chinese Rest., 884 F. Supp. 663, 669 (E.D.N.Y. 1995) (explaining that "[a]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded"); Deshmukh v. Cook, 630 F. Supp. 956, 959-60 (S.D.N.Y. 1986). The court, however, must review the allegations in the complaint to determine if the elements of each claim have been adequately pleaded. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Archbold v. Tristate ATM, Inc., Nos. 11 CV 5796, 12 CV 847, 2012 WL 3887167, at *3 (E.D.N.Y. Sept. 7, 2012).

B.  Plaintiff's Claims

1) FLSA Claims

Plaintiff claims that defendant failed to pay plaintiff the statutorily required minimum wage under the FLSA for the entirety of his employment with defendant. (Compl. ¶¶ 5, 28; Pl.'s

6

Mot.,[5] Ex. C). Beginning on July 24, 2009,[6] the FLSA provides that "every employer shall pay to each of his employees who . . . is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at . . . $7.25 an hour." 29 U.S.C. § 206(a)(1)(C).

Plaintiff also claims that defendant failed to pay plaintiff overtime for the entirety of his employment with defendant in violation of the FLSA. (Compl. ¶ 23). The FLSA provides that "no employer shall employ any of his [covered] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Overtime is calculated at a rate of one and one-half times an employee's regular hourly pay for work performed in excess of forty hours per week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. §§ 142-2.2, -3.2. However, if an employee's "regular rate" is below the required minimum wage, the employee's overtime rate is calculated using the required minimum wage as the "regular rate." See Pineda-Herrera v. Da-Ar-Da, Inc., No. 09 CV 5140, 2011 WL 2133825, at *3 (E.D.N.Y. May 26, 2011).

---

[5] Citations to "Pl.'s Mot." refer to Plaintiff's Motion Pursuant to Fed. R. Civ. P. 55(b)(2) And Local Rule 55.2(B), filed on March 15, 2013.

[6] In this case, plaintiff claims that he is owed unpaid minimum wages for a period of time prior to July 24, 2009. (See discussion infra at pp. 11-13). From July 24, 2007 until July 23, 2008, the federal minimum wage applicable under the FLSA was $5.85, which was increased to $6.55 per hour on July 24, 2008. During this same time, from January 1, 2007 through July 23, 2009, the minimum wage under the New York Labor Law was $7.15 per hour. According to 29 U.S.C. § 218(a), a state's minimum wage law governs if the state's wage is higher than that provided by federal law. Accordingly, under both state and federal law, the minimum wage applicable to plaintiff's claims in this case was $7.15 per hour until July 24, 2009. On that date, both the federal and state minimum wages were increased to $7.25 per hour; thus, the applicable minimum wage for plaintiff's claims falling on and after July 24, 2009 is $7.25.

7

To establish a claim under the FLSA, a plaintiff must prove that: (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  Locke v. St. Augustine's Episcopal Church, 690 F. Supp. 2d 77, 84 (E.D.N.Y. 2010) (citing Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 295 (1985)).

According to the FLSA, a defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> [H]as employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A).

In this case, plaintiff alleges that defendant is "an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA . . . ." (Compl. ¶ 21). Additionally, plaintiff alleges that the corporate defendant had an annual gross revenue of at least $500,000 for the years 2009, 2010, and 2011.  (Id. ¶ 22).  In the context of this default, where defendant has elected not to challenge plaintiff's claims, the Court accepts these uncontested allegations as true.  Thus, the Court finds that the corporate defendant is an employer under the FLSA for 2009, 2010, and 2011.

With respect to plaintiff's 2012 claims, however, plaintiff has failed to allege that defendant had an annual gross volume of sales equal to or greater than $500,000, as is required by the statute.  (See Compl. ¶ 22).  29 U.S.C. § 203(s)(1)(A).  Indeed, as noted, the Court must

8

review the allegations in the complaint to determine if the elements of each claim have been adequately pleaded. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65. Furthermore, Federal Rule of Civil Procedure 54(c) bars a court from awarding a plaintiff damages in excess of the damages alleged in the complaint filed with the court when granting a default judgment. See Fed. R. Civ. P. 54(c); Silge v. Merz, 510 F.3d 157, 159 (2d Cir. 2007) (recognizing that it would be unfair if a defendant were to choose not to defend himself in an action based upon the amount or kind of damages claimed in the complaint and then later were to be assessed damages beyond those alleged in the complaint in a default judgment). Accordingly, because plaintiff failed to allege that defendant had a gross annual volume of sales not less than $500,000 for the year 2012, plaintiff may not recover under the FLSA for that period. See Locke v. St. Augustine's Episcopal Church, 690 F. Supp. 2d at 84.

Notwithstanding the deficiency in plaintiff's Complaint regarding defendant's status as an employer for the year 2012, the Complaint states that plaintiff was employed by defendant, who, as noted above, is an employer within the meaning of the FLSA for the years 2009, 2010, and 2011. (Compl. ¶ 5). It follows, therefore, that plaintiff qualifies as an "employee" pursuant to the FLSA for the years 2009, 2010, and 2011.[7]

Plaintiff alleges that during the period of his employment, he routinely worked ten hours a day, six days a week. (Id. ¶ 10). He further claims that on Tuesdays, he worked twelve hours a day. (Id. ¶ 36). Plaintiff alleges that he was always paid $6.00 per hour, regardless of how many hours he worked in a week, and that he was never paid overtime compensation. (Id. ¶ 11). Since

---

[7] The parties do not suggest, and the Court does not find any basis for exempting the employment relationship at issue from the FLSA's provisions. See 29 U.S.C. § 213(a) (setting forth the exemptions).

plaintiff adequately alleges that he was not paid minimum wage or overtime in compliance with the FLSA, the Court finds that plaintiff may recover under the FLSA for the years 2009, 2010, and 2011.

    2) <u>Willfulness</u>

    The statute of limitations for claims pursuant to the FLSA is two years.  29 U.S.C. § 255(a).  The statute of limitations is extended for one additional year for claims arising out of a willful violation by defendant of the FLSA.  <u>Id.</u>  Plaintiff bears the burden of proof in showing that the defendant-employer willfully violated the FLSA.  <u>Herman v. RSR Sec. Servs. Ltd.</u>, 172 F.3d 132, 141 (2d Cir. 1999).  In order to prove an employer wilfully violated the FLSA, a plaintiff must show that the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988).

    Here, plaintiff alleges that defendant willfully failed to comply with the FLSA and that plaintiff is therefore entitled to a three year statute of limiations.  (Compl. ¶ 18).  In light of this uncontested claim, and recognizing that when a defendant defaults, it is deemed to have admitted every well-pleaded allegation of the complaint, <u>see</u> <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d at 65, the Court finds that defendant acted willfully in failing to pay plaintiff in accordance with the FLSA for 2009, 2010, and 2011.  As such, plaintiff is entitled to damages for FLSA violations that occurred up to three years prior to the date he filed his Complaint, September 24, 2012.  <u>See</u> <u>Solis v. Tally Young Cosmetics, LLC</u>, No. 09 CV 4804, 2011 WL 1240341, at *6 (E.D.N.Y. Mar. 4, 2011) (noting that a new cause of action accrues with each payday following an unlawful pay period (quoting <u>Hosking v. New World Mortg., Inc.</u>, 602 F. Supp. 2d 441, 446 (E.D.N.Y.

2009))). Thus, plaintiff may seek damages for the FLSA violations arising between September 24, 2009 and December 31, 2011.[8]

   3) NYLL Claims

   Plaintiff alleges that defendant violated the NYLL because defendant failed to pay plaintiff the legally required minimum wage, overtime, and spread of hours pay during his employment with defendant.  (Compl. ¶¶ 30-42).  Pursuant to the NYLL, the minimum wage was $7.15 per hour until July 23, 2009, and was $7.25 per hour beginning on July 24, 2009.  See N.Y. Lab. Law § 652.  The NYLL mirrors the FLSA's requirement that employees be compensated at an overtime rate of one and one-half times their regular hourly pay for time worked in excess of forty hours in a week.  See 12 N.Y.C.R.R. § 142-2.2; see, e.g., Noble v. 93 Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003).  In addition, under the NYLL, an employer is required to provide an additional hour of pay at minimum wage for each day that the employee works for more than ten hours (i.e., "spread of hours" wages).  See N.Y. Lab. Law § 650; 12 N.Y.C.R.R. § 142-2.4(a).

   To recover under the NYLL, plaintiff must prove that he is an "employee" and that defendant is an "employer," as each term is defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009).  Unlike the FLSA, defendants are not required to achieve a certain amount in sales per year in order to be considered employers under the NYLL.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized

---

   [8] Plaintiff states that his employment with defendant ended on June 18, 2012.  (Compl. ¶ 5).  However, plaintiff may not recover damages for unpaid wages in 2012 pursuant to the FLSA because, as stated, plaintiff failed to state a claim under the FLSA for 2012.  (See supra p. 8).

11

group of persons acting as employer"). An employee is defined as "any individual employed or permitted to work by an employer in any occupation . . . ." N.Y. Lab. Law § 651(5). Therefore, pursuant to the allegations contained in plaintiff's Complaint, plaintiff fits within the definition of "employee" and defendant satisfies the definition of "employer" under the NYLL.[9] (See Compl. ¶¶ 30-31).

In his Complaint, plaintiff alleges that defendant failed to pay him both minimum and overtime wages as prescribed by the NYLL. (Id. ¶¶ 33, 41). He also alleges that he routinely worked in excess of 10 hours a day on Tuesdays, but that he was not paid spread of hours wages as required by the NYLL. (Id. ¶¶ 36-37). During the inquest hearing and in plaintiff's damages calculations, plaintiff claimed that his employment began in September 2008. (Tr. at 4; Pl.'s Mot., Ex. C). Thus, plaintiff requested at the inquest hearing that he receive minimum wage compensation, overtime compensation, spread of hours pay, liquidated damages, and pre-judgment interest for the period from September 2008 through June 18, 2012. (Tr. at 4; Compl. ¶¶ 5, 30-42). However, in his Complaint, plaintiff alleges that his employment began "on or about 2009." (Compl. ¶ 5). Since the Court cannot award plaintiff damages in excess of what was alleged in the Complaint when granting a default judgment, the Court finds that January 1, 2009 serves as the first day of plaintiff's employment for the purposes of this Report and Recommendation. See Fed. R. Civ. P. 54(c); Silge v. Merz, 510 F.3d at 159.[10]

---

[9] No exceptions to the definition of employee contained in the NYLL apply in this case. See N.Y. Lab. Law § 651(5) (defining the exceptions).

[10] In reading the Complaint, defendant could expect damages to be assessed for all alleged violations occurring during 2009, but not for any alleged violations occurring during parts of 2008 since the September 2008 date was not mentioned in plaintiff's Complaint. See Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 282 (E.D.N.Y. 2010) (citing King v. STL Consulting,

Claims arising pursuant to the NYLL are subject to a six year statute of limitations.  N.Y. Lab. Law §§ 198(3), 663(3). Therefore, plaintiff's claims for unpaid minimum wages, overtime, spread of hours wages, and liquidated damages, arising between January 1, 2009 and June 18, 2012 are recoverable under the NYLL.  See Pinzon v. Paul Lent Mech. Sys, Inc., No 11 CV 3384, 2012 WL 4174725, at *3 (E.D.N.Y. Aug. 21, 2012) (finding that plaintiff could recover damages under the NYLL for claims arising outside of the FLSA's statute of limitations).

C.  Damages

    1) Legal Framework

It is well-settled that the burden is on the plaintiff to establish an entitlement to recovery. See Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985).  When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability.  See Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th Cir. 1989)); Deshmukh v. Cook, 630 F. Supp. at 959; 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988).  However, the plaintiff still must prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages.  See Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical

_____

LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006)) (holding that 54(c) is not violated if plaintiff's complaint put defendant on notice as to the amount and kind of damages plaintiff is seeking).

computation.'" Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).  Where a plaintiff's testimony is found to be inconsistent with corresponding facts submitted to the court or is otherwise not credible, the court must resolve the inconsistencies in favor of the defendant. Huerta v. Victoria Bakery, No. 10 CV 4754, 2012 WL 1100647, at *10 (E.D.N.Y. Feb. 17, 2012), report & recommendation adopted as modified by 2012 WL 1107655 (E.D.N.Y. Mar. 30, 2012).

    2) Analysis

    On May 8, 2013, this Court held an inquest hearing at which plaintiff verified that he was employed by defendant to change oil filters.  (Tr. at 4).  Plaintiff testified that he began working for defendant in September 2008[11] and that he stopped his employment on June 18, 2012.  (Id.) Plaintiff stated that he worked for defendant at the rate of $6.00 per hour, irrespective of how many hours he worked.  (Id. at 6).  Plaintiff testified that he typically worked Monday, Wednesday, Thursday, Friday, and Saturday, from 9:00 a.m. until 7:00 p.m., and on Tuesday he worked from 7:00 a.m until 7:00 p.m., for a total of approximately 62 hours per week.  (Id. at 5). Plaintiff testified that defendant paid him in cash and that he did not take days off for holidays or for any other reason.  (Id. at 7-9).  Plaintiff also testified that he was not given a lunch break; plaintiff explained that he would order food and eat it while working.  (Id. at 8).  While plaintiff initially stated that he occasionally received tips from customers, when asked to clarify this statement, plaintiff testified that he did not receive tips.  (Id.)  In his Complaint, plaintiff seeks

---

[11] As noted supra p. 12, this testimony contradicts the allegations in plaintiff's Complaint, which alleges that plaintiff began working for defendant "on or about 2009."  (Compl. ¶ 5).

pre-judgment interest, post-judgment interest, unpaid overtime, unpaid minimum wages, spread of hours wages, liquidated damages, and attorneys' fees and costs. (Compl. ¶¶ A-D). During the inquest, however, plaintiff's counsel informed the Court that plaintiff is not seeking attorneys' fees and costs. (Tr. at 3).

### 3) FLSA Damages

Under the FLSA, employers are required to maintain records of the hours worked by their employees and of the wages employees receive. 29 U.S.C. § 211(c). Where the employer fails to maintain the appropriate records, "the plaintiff may carry out his burden 'if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" Moon v. Kwon, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L.Ed. 1515 (1946)). Here, plaintiff claims that he is entitled to receive $7,130.00 in minimum wage and $11,372.35 in overtime wages, representing 62 hours per week for a period of 142.6 weeks. (See Pl.'s Mot., Ex. C). Since defendant has failed to present any evidence to dispute the number of hours allegedly worked by plaintiff or the wages paid to plaintiff, the only evidence as to plaintiff's claim of hours worked and wages received is plaintiff's testimony.

Having considered the plaintiff's testimony, the Court finds that a small deduction is appropriate. Although plaintiff testified that he was never given a day off (Tr. at 9), the Court does not credit this testimony; it seems highly unlikely that the car wash was open on holidays, such as Christmas and New Years Day, or that plaintiff failed to take a single sick day or vacation day in the almost three years that he worked for defendant. Moreover, the Court finds

15

unpersuasive plaintiff's testimony that he never took a lunch break, and finds plaintiff's assertion

that he did not receive tips to be contradicted by his own testimony to the contrary.  Beyond his

contradictory statements and demeanor during the inquest hearing, the nature of plaintiff's work

also makes it difficult for the Court to accept that he did not receive tips or stop his work to eat

during the day.

Due to the inconsistent nature of plaintiff's responses, the Court respectfully recommends

that for each full year worked pay for two weeks be deducted from plaintiff's award of damages;

for each half year worked, the Court recommends that one week of pay be deducted from the

damages sought by plaintiff.  These deductions are intended to account for holidays, sick days,

vacation days, and lunch breaks likely taken by plaintiff.  These deductions are also intended to

account for the tips plaintiff may have received.

a.  <u>Minimum Wage – FLSA</u>

In support of plaintiff's request for unpaid minimum wages pursuant to the FLSA,

plaintiff submitted a chart that illustrates plaintiff's damages calculations.  (<u>See</u> Pl.'s Mot., Ex.

C.)

To arrive at the sum allegedly owed to plaintiff, plaintiff subtracted his hourly wage,

$6.00, from the statutorily mandated minimum wage, $7.25, for the time between September 24,

2009 and June 18, 2012.  (<u>See id.</u>)  Plaintiff then multiplied the difference by forty hours to

determine the amount by which plaintiff was underpaid each week.  (<u>Id.</u>)  Plaintiff multiplied the

number of weeks he was underpaid by the amount in wages he was underpaid each week.[12]  (<u>Id.</u>)

_____

[12] Plaintiff calculates his alleged FLSA damages up to June 18, 2012 (Pl.'s Mot., Ex. C),
but, as was noted <u>supra</u> p. 8, plaintiff's FLSA claims were only properly alleged up to December
31, 2012.  Accordingly, the Court's FLSA damages calculations do not take plaintiff's 2012

The FLSA guarantees that each employee will be paid the applicable minimum wage for the first forty hours worked per week.  See 29 U.S.C. § 206(1)(c); Pineda-Herrera v. DA-AR-DA, Inc., 2011 WL 2133825, at *3.  With the deductions recommended by the Court, the amount of minimum wages owed to plaintiff is as follows:

MINIMUM WAGE – FLSA

| Dates | 9/24/09[13] - 12/31/11[14] |
|---|---|
| Weeks Worked | 113.3[15] |
| Hours per Week | 40 |
| Hourly Pay Rate | $6.00 |
| Minimum Statutory Pay Rate (FLSA) | $7.25 |
| Hourly Underpayment | $1.25 |
| Weekly Underpayment | $50.00 |
| Total Underpayment | $5,665.00 |

FLSA claims into account.

[13] Plaintiff's FLSA damages begin on September 24, 2009 because as noted supra p. 10 plaintiff is entitled to the three year statute of limitations for the FLSA due to defendant's willful violations of the statute calculated from the day plaintiff filed his Complaint, September 24, 2012.

[14] Plaintiff states that his employment with defendant ended on June 18, 2012.  (Compl. ¶ 5).  However, plaintiff may not recover damages for unpaid wages in 2012 pursuant to the FLSA because, as stated, plaintiff failed to state a claim under the FLSA for 2012.  (See supra p. 8).  Thus, plaintiff's FLSA damages end on December 31, 2011.

[15] The number of weeks worked incorporates the deduction assessed by the Court of two weeks per year for the years 2010 and 2011 and one week for roughly the last half of 2009.  (See supra p. 15).

17

Based on a review of plaintiff's testimony and of the papers filed in support of plaintiff's Motion for Default Judgment, the Court respectfully recommends that plaintiff be awarded $5,665.00 in unpaid minimum wages pursuant to the FLSA, representing 113.3 weeks of hourly under-payments of $1.25 per hour.

   b. Overtime Wages – FLSA

Plaintiff also seeks an award of unpaid overtime wages pursuant to the FLSA. The FLSA "guarantees that employees are paid overtime compensation 'at a rate not less than one-half times the regular rate at which [the employee] is employed.'" Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 357 (E.D.N.Y. 2007) (citing 29 U.S.C. §§ 206(a)(1), 207(a)(1)). Since plaintiff was paid only $6.00 per hour, well below the applicable minimum wage during his employment, plaintiff is entitled to overtime compensation that is based on the minimum wage. See Pineda-Herrera v. DA-AR-DA, Inc., 2011 WL 2133825, at *3 (finding that if an employee is paid below the minimum wage, the employee's overtime compensation should be based on the minimum wage).

To arrive at the amount allegedly owed to him, plaintiff first divided the statutorily mandated minimum wage, $7.25, in half to determine what he was being underpaid for each hour that he was entitled to receive time and one-half pay. (See Pl.'s Mot., Ex. C). From there, plaintiff multiplied the amount reflecting his underpayment per hour of overtime by the number of overtime hours he worked per week and the total number of weeks he worked at each applicable minimum wage rate. (Id.) Based on these calculations, plaintiff alleges that he worked 22 overtime hours per week and that he ought to have received $10.88 per overtime hour worked. (Id.) See Mejia v. East Manor USA, Inc., No. 10 CV 4313, 2013 WL 3023505, at *6

18

(E.D.N.Y. Apr. 19, 2013) (calculating overtime pay at $10.88 per hour for employees earning $7.25 per hour for every hour up to 40 in a week).

In light of plaintiff's sworn testimony at the inquest hearing, taking into account the Court's recommended deduction, and the applicable statutory rate of pay in effect during the relevant period, the amount of overtime owed to plaintiff is as follows:

OVERTIME – FLSA

| Dates | 9/24/09[16] - 12/31/11[17] |
|---|---|
| Weeks Worked | 113.3[18] |
| Overtime Hours per week | 22 |
| Hourly Pay Rate | $6.00 |
| Minimum Overtime Pay Rate (FLSA) | $10.88[19] |
| Hourly Underpayment | $4.88 |
| Weekly Underpayment | $107.36 |
| Total Underpayment | $12,163.89 |

Based upon a review of plaintiff's testimony and upon the papers filed in support of plaintiff's Motion for Default Judgment, the Court respectfully recommends that plaintiff be

---

[16] See supra n.12.

[17] See supra n.13.

[18] The number of weeks worked here incorporates the same five week deduction as for plaintiff's FLSA minimum wage claims.

[19] Plaintiff's calculations for overtime pay use the statutorily mandated minimum wage, rather than his actual pay, as the base pay from which to calculate plaintiff's overtime rate. (See supra p. 18).

19

awarded $12,163.89 in overtime pay, representing 113.3 weeks of under-payments of $4.88 per hour

Accordingly, the Court respectfully recommends that plaintiff be awarded $12,163.89, representing overtime owed by defendant pursuant to the FLSA.

### c. Liquidated Damages

Plaintiff also seeks an award of liquidated damages pursuant to the FLSA for plaintiff's claims arising between September 24, 2009 and December 31, 2011.[20] "Under the FLSA, a plaintiff who demonstrates that he was improperly denied either minimum wages or overtime may recover, in addition to reimbursement of unpaid wages, an amount equal to the unpaid wages unless the employer demonstrates that it acted in good faith and had reasonable grounds for believing that it had not violated the FLSA." Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d at 261 (citing 29 U.S.C. §§ 216(b), 260). A defendant-employer who opposes an award of

---

[20] The NYLL also provides for an award of liquidated damages, but as with the FLSA, the NYLL requires that the Court find that the employer acted willfully before making such an award. See N.Y. Lab. Law § 198; see, e.g., Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339880, at *4 (S.D.N.Y. Aug. 15, 2012) (holding that: "Liquidated damages also were available to Plaintiffs in an amount equaling 25% of any under-payments for willful violations of the NYLL"). While some courts in the Second Circuit have awarded liquidated damages under both the FLSA and NYLL for the same violations, reasoning that the two awards serve different purposes, see Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261-62 (S.D.N.Y. 2008) (allowing plaintiff to recover liquidated damages under both the FLSA and NYLL); Gurung v. Malhotra, 851 F. Supp. 2d 583, 593-94 (S.D.N.Y. 2012), other courts have declined to recognize this distinction because the underlying predicate – i.e., an employer's willful violation of the law – is the same for both statutes. See Pinzon v. Paul Lent Mech. Sys., Inc., 2012 WL 4174725, at *4 (quoting Pineda-Herrera v. Da-Ar-Da, Inc., 2011 WL 2133825, at *4 (reasoning that both the FLSA and the NYLL liquidated damages provisions "seek to deter wage-and-hour violations" and compensate the harmed party, and holding that the greater of the two awards provides the appropriate relief)). Here, plaintiff has not requested a separate award of liquidated damages under the NYLL for the same time period as his FLSA claims. (See Pl.'s Mot. Ex. C). The Court, therefore, does not address the issue.

liquidated damages under the FLSA "bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness." Id. (quoting Reich v. S. New England Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 1997)); see also Herman v. RSR Sec. Servs. Ltd., 172 F.3d at 142 (finding that "[t]o establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them"). The Second Circuit has commented that this is a difficult burden for an employer to meet, and as a consequence, "double damages are the norm, single damages the exception." Benavidez v. Plaza Mexico, Inc., No. 09 CV 5076, 2012 WL 500428, at *7 (S.D.N.Y. Feb. 15, 2012) (quoting Reich v. S. New England Telecomm. Corp., 121 F.3d at 71 (internal quotation marks omitted)).

Plaintiff alleges that defendant willfully violated the FLSA, and therefore argues that defendant should be assessed liquidated damages. (Compl. ¶¶ 18, A). In light of these uncontested allegations, and defendant's failure to demonstrate that it acted in "good faith and . . . had reasonable grounds for believing [its] act or omission was not in violation of the [FLSA]," Reich v. S. New England Telecomm. Corp., 121 F.3d at 70-71, the Court respectfully recommends that plaintiff be awarded $17,828.89 in liquidated damages, which is the equivalent of his unpaid overtime wages and minimum wages, minus any deductions subtracted from his minimum wage and overtime claims for time off. See 29 U.S.C. § 216(b).

4) NYLL Damages

Plaintiff seeks an award for unpaid minimum and overtime wages allegedly owed to him by defendant pursuant to the NYLL. (Compl. ¶¶ 30-42). Plaintiff may only be awarded damages pursuant to the NYLL for periods of his employment that are not covered by the FLSA. See Janus v. Regalis Constr., Inc., No. 11 CV 5788, 2012 WL 3878113, at *7 (E.D.N.Y. Jul. 23,

21

2012) (citing <u>Yu G. Ke v. Saigon Grill, Inc.</u>, 595 F. Supp. 2d at 262 n.44); <u>Maldonado v. La</u>

<u>Nueva Rampa, Inc.</u>, No. 10 CV 8195, 2012 WL 1669341, at *5 (S.D.N.Y. May 14, 2012) (citing

<u>Cao v. Wu Lian Ye Lexington Rest., Inc.</u>, No. 08 CV 3725, 2010 WL 4159391, at *2 n.2

(S.D.N.Y. Sept. 30, 2010)).  Accordingly, plaintiff is only entitled to damages pursuant to the

NYLL from January 1, 2009 to September 23, 2009, the time period of plaintiff's employment

pre-dating the FLSA statute of limitations, and from January 1, 2012 to June 18, 2012, the time

period following plaintiff's adequately alleged FLSA claims.

        a.  <u>Minimum Wage -- NYLL</u>

Plaintiff seeks an award for unpaid minimum wages allegedly owed to him by defendant

pursuant to the NYLL.  <u>See</u> N.Y. Lab. Law § 652.  Under the NYLL, plaintiff was entitled to

receive a minimum of $7.15 per hour from January 1, 2009 until July 23, 2009.  <u>See id.</u>  From

July 24, 2009 until September 23, 2009 and also from January 1, 2012 to June 18, 2012, plaintiff

was entitled to receive a minimum of $7.25 per hour.  <u>See id.</u>; 29 U.S.C. § 218(a) (explaining

that when state minimum wage laws require a higher minimum wage, the federal minimum wage

does not preempt the state minimum wage).

To arrive at the sum plaintiff claims he is owed, plaintiff first subtracted his hourly wage,

$6.00, from the statutorily mandated minimum wage, $7.15 per hour, between January 1, 2009

and July 23, 2009 and $7.25 per hour thereafter.  (<u>See</u> Pl.'s Mot., Ex. C).  Plaintiff multiplied the

difference by forty hours to determine the amount by which he was underpaid each week.  (<u>Id.</u>)

Then, plaintiff multiplied the number of weeks he was underpaid by the amount by which he was

underpaid each week.  (<u>Id.</u>)

The NYLL guarantees that each employee will be paid the applicable minimum wage for

22

the first forty hours worked per week.  See N.Y. Lab. Law § 652.  According to both plaintiff's Complaint and his sworn testimony at the inquest hearing, plaintiff was paid $6.00 per hour for his entire employment with defendant, but was owed an additional $1.15 per hour from January 1, 2009 to July 23, 2009 and an additional $1.25 per hour thereafter pursuant to the NYLL. Thus, the amount of unpaid minimum wages owed to plaintiff is as follows:

MINIMUM WAGE – NYLL

| Dates | 1/01/09[21] - 7/23/09[22] | 7/24/09 - 9/23/09[23] | 1/01/12 - 6/18/12[24] |
|---|---|---|---|
| Weeks Worked[25] | 28.0 | 8.7 | 23.0 |
| Hours per Week | 40 | 40 | 40 |
| Hourly Pay Rate | $6.00 | $6.00 | $6.00 |
| Minimum Statutory Pay Rate (NYLL) | $7.15 | $7.25 | $7.25 |
| Hourly Underpayment | $1.15 | $1.25 | $1.25 |
| Weekly Underpayment | $46.00 | $50.00 | $50.00 |
| Total Underpayment | $1,288.00 | $435.00 | $1,150.00 |
| Actual Damages | $2,873.00 | | |

Based on a review of plaintiff's testimony, the Court respectfully recommends that

plaintiff be awarded unpaid minimum wages of $2,873.00. This award takes into account one

---

[21] As noted supra p. 12, plaintiff's unpaid wage claims begin on January 1, 2009.

[22] Since July 23, 2009 marks the last day when the New York State minimum wage was $7.15 per hour, from July 24, 2009 onward, the applicable minimum wage was $7.25 per hour. N.Y. Lab. Law § 652.

[23] Plaintiff is barred from recovering damages under both the FLSA and the NYLL for the same unpaid wage claims. Here, plaintiff's FLSA damages begin on September 24, 2009. Accordingly, plaintiff's NYLL award of damages ends the day before his FLSA claims begin.

[24] As noted supra p. 8 plaintiff did not properly allege defendant's violation of the FLSA for his claims arising after December 31, 2011. Nonetheless, plaintiff properly alleged violations of the NYLL for the six months of his employment in 2012.

[25] The number of weeks worked in each column incorporates the Court's deduction for vacation days from the number of weeks plaintiff has claimed he worked. (See supra p. 15).

week's deduction for roughly the first half of 2009 in which plaintiff was owed $7.15 per hour and one week's deduction for roughly the first half of 2012 in which plaintiff was owed $7.25 per hour. No deduction was assessed for plaintiff's NYLL claims arising in the second half of 2009 because a deduction was already assessed for the last half of 2009 in plaintiff's FLSA damages.

Accordingly, the Court respectfully recommends that plaintiff be awarded $2,873.00, representing unpaid minimum wages owed pursuant to the NYLL.

b. Overtime – NYLL

Plaintiff also seeks an award of overtime wages, alleging that defendant willfully failed to pay him overtime wages from January 1, 2009 until September 23, 2009 and, additionally, from January 1, 2012 until June 18, 2012. (Compl. ¶¶ 30-35). Section 142-2.2 of the New York Code, Rules and Regulations requires employers to compensate their employees at an overtime rate of one and one-half time the employee's regular rate for every hour that the employee works in excess of forty hours in a week. N.Y.C.R.R. § 142-2.2; 29 U.S.C. § 207(a)(1).

Plaintiff alleges that he was never paid an hourly wage over $6.00 per hour during his employment with defendant, but worked, on average, 62 hours per week. (Tr. at 6). As such, the same circumstances discussed with respect to the FLSA apply and plaintiff is entitled to recover unpaid overtime wages pursuant to the NYLL. See Santillan v. Henao, 822 F. Supp. 2d 284, 293 (E.D.N.Y. 2011) (citing Debejian v. Atlantic Testing Labs., Ltd., 64 F. Supp. 2d 85, 87 n.1 (N.D.N.Y. 1999)) (explaining that the NYLL is the state analogue of the FLSA). Although plaintiff in this case was paid less than both the federal and New York minimum wage of $7.15 per hour and later $7.25 per hour, he is nonetheless entitled to receive overtime pay based on the statutorily mandated minimum wages for those periods. See Pineda-Herrera v. DA-AR-DA, Inc.,

WL 2011 2133825, at *3. Here, since defendant has failed to present any evidence to dispute the number of hours allegedly worked by plaintiff, the Court accepts plaintiff's claim of hours worked, excluding the time deducted by the Court for the reasons stated. See Pinzon v. Paul Lent Mech. Sys., Inc., 2012 WL 4174725, at *2 (citing Perero v. Food Jungle, Inc., Nos. 05 CV 4347, 05 CV 5169, 05 CV 5170, 2006 WL 2708055, at *5 (E.D.N.Y. Aug 7, 2006)).

To arrive at the amount owed to him, plaintiff divided in half the statutorily mandated minimum wage of $7.15 in effect between January 1, 2009 and July 23, 2009, and of $7.25 thereafter, and added those sums to the minimum wage rate applicable to those periods to determine what he was being underpaid for each hour that he was entitled to receive overtime wages. From there, plaintiff multiplied the amount reflecting his underpaid overtime wages by the number of overtime hours he worked per week and the total number of weeks he worked at each pay rate. (See Pl.'s Mot., Ex. C). Based on these calculations, plaintiff alleges that he worked 22 overtime hours per week. (Id.) While plaintiff's hourly pay rate was $6.00 per hour, plaintiff's calculations use the statutory minimum wages. (Id.) Using the statutorily mandated minimum wages as a base, plaintiff's overtime rate for the period from January 1, 2009 to July 23, 2009 was $10.73 per hour and for the time thereafter the rate was $10.88 per hour. See Mejia v. East Manor USA, Inc., 2013 WL 3023505, at *6; Angamarca v. Pita Grill 7, Inc., No. 11 CV 7777, 2012 WL 3578781, at *6 (S.D.N.Y. Aug. 2, 2012) (calculating overtime pay at $10.73 per hour for employees earning $7.15 per hour for every hour up to 40 in a week).

In light of plaintiff's sworn testimony at the inquest hearing and the applicable statutory rates of pay in effect during the relevant period, the amount of overtime owed to plaintiff is as follows:

OVERTIME – NYLL

| Dates[26] | 1/01/09 - 7/23/09 | 7/24/09 - 9/23/09 | 1/01/12 - 6/18/12 |
|---|---|---|---|
| Weeks Worked[27] | 28.0 | 8.7 | 23.0 |
| Weekly Overtime Hours | 22 | 22 | 22 |
| Hourly Pay Rate | $6.00 | $6.00 | $6.00 |
| Minimum Statutory Pay Rate (NYLL) | $10.73 | $10.88 | $10.88 |
| Hourly Underpayment | $4.73 | $4.88 | $4.88 |
| Weekly Underpayment | $104.06 | $107.36 | $107.36 |
| Total Underpayment | $2,913.68 | $934.03 | $2,469.28 |
| Actual Damages | $6,316.99 | | |

Based on a review of plaintiff's testimony, the Court respectfully recommends that plaintiff be awarded unpaid overtime pay of $6,316.99 under the NYLL for the periods set forth in the chart above. This incorporates one week's deduction for vacation and other days off taken by plaintiff for roughly the first half of 2009 in which plaintiff was owed $4.73 more per hour, and one week's deduction for vacation taken by plaintiff for roughly the first half of 2012, in which plaintiff was owed $4.88 more per hour. No deduction was assessed for plaintiff's NYLL claims arising in the second half of 2009 because a deduction was already assessed for that

---

[26] The dates used for plaintiff's NYLL overtime claims are identical to the dates used for plaintiff's NYLL minimum wage claims.

[27] The number of weeks worked in each column incorporates the Court's deduction for sick and vacation days from the number of weeks plaintiff claimed to have worked during his employment. (See supra p. 15).

27

period under plaintiff's FLSA damages.

Accordingly, the Court respectfully recommends that plaintiff be awarded $6,316.99, representing unpaid overtime pay owed by defendant pursuant to the NYLL.

       c.  <u>Spread of Hours Wages</u>

In addition to his minimum and overtime wage claims, plaintiff seeks an award of spread of hours wages, alleging that defendant willfully violated plaintiff's rights by failing to pay him an additional hour of pay for the days on which he worked more than ten hours. (Compl. ¶ 38). Section 142-2.4 of the New York Code, Rules and Regulations provides that "on each day on which the spread of hours exceeds [ten], an employee shall receive one additional hour of pay at the basic minimum hourly rate." N.Y.C.R.R. § 142-2.4. The "spread of hours" is defined as "the length of the interval between the beginning and end of an employee's workday," which includes "working time plus time off for meals plus intervals off duty." <u>Id.</u> Where a defendant fails to provide employees with spread of hours compensation, the defendant is required to pay an additional hour of compensation for each workday on which the spread of hours exceeded ten hours. <u>See</u> <u>Paz v. Pierda</u>, No. 09 CV 03977, 2012 WL 121103, at *9 (S.D.N.Y. Jan. 12, 2012); <u>Benavidez v. Plaza Mexico, Inc.</u>, 2012 WL 500428, at *5.

Plaintiff calculated his spread of hours wages by multiplying the number of weeks worked by $7.15 for the period between January 1, 2009 and July 23, 2009, and by $7.25 for the period between July 24, 2009 to June 18, 2012. (Pl.'s Mot. Ex. C). The spread of hours wages owed to plaintiff are set forth below:

SPREAD OF HOURS

| Dates | Weeks Worked[28] | Days >10 Hrs per week | Statutory Minimum Wage | Spread of Hours Owed |
|---|---|---|---|---|
| 1/1/09 - 7/23/09 | 28 | 1 | $7.15 | $200.20 |
| 7/24/09 - 6/18/12 | 145 | 1 | $7.25 | $1,051.25 |
| | | | TOTAL | $1,251.45 |

Accordingly, the Court finds that for the duration of his employment, plaintiff worked one day per week in excess of ten hours per day, for a total of 28 days at the applicable minimum wage of $7.15 per hour and 149 days at $7.25 per hour. This finding includes the deduction for time off taken by plaintiff. (See discussion supra p. 15). Specifically, it is recommended that plaintiff be docked one spread of hours payment at $7.15 for the first half of 2009, corresponding to the Court's recommendation that one week be excluded for vacation days, sick days, lunch breaks, and tips earned. Similarly, it is recommended that an additional six spread of hours payments of $7.25 apiece be deducted for the remainder of his employment. These deductions correspond to the one week deduction for roughly the last half of 2009, the one week deduction for the first half of 2012, and two week deductions for both 2010 and 2011, respectively.

Accordingly, with the recommended deductions, the Court respectfully recommends that plaintiff be awarded $1,251.45, representing spread of hours owed by defendant under the NYLL.

    d.  Liquidated Damages

Plaintiff also seeks liquidated damages on those NYLL minimum wage, overtime, and

---

[28] The number of weeks worked in each row incorporates the Court's deduction for vacation days from the number of weeks plaintiff claimed to have worked during his employment. (See supra p. 15).

29

spread of hours claims for which he is permitted to recover damages. (Pl.'s Mot., Ex. C). See

Rodriguez v. Queens Convenience Deli Corp., No. 09 CV 1089, 2011 WL 4962397, at *6

(E.D.N.Y. Oct. 18, 2011) (awarding liquidated damages pursuant to the NYLL on all plaintiff's

state law claims that were outside the scope of the time period covered by the FLSA). Under the

New York Labor Law, an employee may recover liquidated damages equal to 25% of the total

wages owed if the violation is found to be willful. N.Y. Lab. Law §§ 198(1-a), 681(1); see, e.g.,

Padilla v. Manlapaz, 643 F. Supp. 2d 302, 313-14 (E.D.N.Y. 2009).

Up until November 24, 2009, a NYLL violation was deemed "willful" if "the employer

'knowingly, deliberately, [or] voluntarily' disregards its obligations to pay wages." N.Y. Lab.

Law §§ 198(1-a); see also Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998)

(quoting P & L Grp., Inc. v. Garfinkel, 150 A.D.2d 663, 541 N.Y.S.2d 535, 537 (2d Dep't

1989)). However, effective November 24, 2009, Section 198(1-a) was amended to shift the

burden of proving a willful violation of the NYLL from the plaintiff to the defendant. N.Y. Lab.

Law §§ 198(1-a). Under the amended statute, the defendant must now prove "a good faith basis

to believe that its underpayment of wages was in compliance with the law." Id.; see also

Greathouse v. JHS Sec., Inc., No. 11 CV 7845, 2012 WL 381523, at *7 (S.D.N.Y. Sept. 7, 2012).

It is not necessary that the defendant be found to have acted maliciously or with bad faith. Id.

(citing In re CIS Corp., 206 B.R. 680, 689 (Bankr. S.D.N.Y. 1997)). Thus, for the period from

January 1, 2009, the date of plaintiff's earliest claims, until November 24, 2009, plaintiff has the

burden of proving defendant's conduct was willful; after that date, the burden shifts to the

defendant to prove that it had a good faith basis to believe it was in compliance with the law.

Plaintiff alleges that defendant willfully violated the NYLL and, therefore, that plaintiff is

30

owed 25% of the total wages owed in liquidated damages.[29]  (Pl.'s Mot. at 8).  In this case, the

Court finds that plaintiff has sufficiently demonstrated willfulness.  Accordingly, the Court

respectfully recommends that plaintiff be awarded $1,663.85 in liquidated damages, representing

25% of plaintiff's 2009, 2010, and 2011 minimum wage, overtime, and spread of hours wages

pursuant to the NYLL.[30]

        e.  Pre-Judgment Interest

     Plaintiff also seeks pre-judgment interest on his NYLL claims.  (Compl. ¶ B).  Federal

law prohibits plaintiffs from recovering pre-judgment interest on claims for which he has already

received liquidated damages under the FLSA.  See Brock v. Superior Care, Inc., 840 F.2d 1054,

1064 (2d Cir. 1988) (finding liquidated damages serve the same compensatory purpose as pre-

judgment interest and an award of both would be a double recovery); Paz v. Piedra, 2012 WL

121103, at *13 (finding that pre-judgment interest cannot be awarded to plaintiff in addition to

liquidated damages pursuant to the FLSA because liquidated damages serve to compensate

plaintiff for unpaid wages).  The same, however, is not true for damages awarded pursuant to the

NYLL.  See Reilly v. Natwest Mkts. Grp., Inc., 181 F.3d 253, 265 (2d Cir. 1999).  The NYLL

awards pre-judgment interest as a compensatory measure, and liquidated damages as a punitive

---

    [29] Section 198 (1-a) was amended again on April 9, 2011 to allow  plaintiffs with claims
arising after that date to recover  liquidated damages equal to 100% of the total amount of wages
found to be due for willful violations of the NYLL.  NY. Lab. Law §§ 198(1-a).  In his damages
calculations, plaintiff has only claimed liquidated damages equal to 25% of his total NYLL
damages.  (See Pl.'s Mot. Ex. C).  Accordingly, the Court will only award him liquidated
damages equal to 25% of his NYLL damages.

    [30]Although plaintiff may be entitled to an award of liquidated damages for his 2012
NYLL claims, he did not request such damages in his calculations.  Thus, the Court has not
recommended such an award.

measure; therefore, when damages are assessed only under the NYLL, the plaintiff may receive

liquidated damages and pre-judgment interest on unpaid wages and spread of hours claims. Id.;

Santillan v. Henao, 822 F. Supp. 2d at 298. Accordingly, plaintiff is entitled to pre-judgment

interest for his claims from January 1, 2009 to September 23, 2009 as well as on his claims from

January 1, 2012 to June 18, 2012; he is also entitled to pre-judgment interest on the entirety of

his spread of hours claims. See Paz v. Piedra, 2012 WL 121103, at *13; Wicaksono v. XYZ 48

Corp., No. 10 CV 3635, 2011 WL 2022644, at *7-8 (S.D.N.Y. May 2, 2011) (awarding pre-

judgment interest on NYLL claim in addition to liquidated damages awarded pursuant to the

NYLL and FLSA); Ting Yao Lin v. Hayashi Ya II, No. 08 CV 6071, 2009 WL 289653, at *7

(S.D.N.Y. Jan. 30, 2009) (awarding pre-judgment interest on all state law claims in addition to

NYLL and FLSA liquidated damages).

New York law sets a rate of nine percent per year for pre-judgment interest. See N.Y.

C.P.L.R. §§ 5001, 5004. Plaintiff is entitled to receive pre-judgment interest on the amount of

compensatory damages awarded, excluding any liquidated damages assessed. Maldonado v. La

Nueva Rampa, Inc., 2012 WL 1669341, at *11. "Where unpaid wages were incurred at various

times, [as they were here], interest shall be computed . . . from a single reasonable intermediate

date." N.Y. C.P.L.R. § 5001(b). See Banasiewicz v. Olympia Mech. Piping & Heating Corp.,

No. 10 CV 369, 2012 WL 4472033, at *7 (E.D.N.Y. Aug. 31, 2012); Said v. SBS Elecs., Inc.,

No. 08 CV 3067, 2010 WL 1265186, at *9-10 (E.D.N.Y. Feb. 24, 2010) (using the midpoint date

of the claims as a starting point from which to calculate the yearly interest due on unpaid wages

and spread of hours claims), adopted as modified by 2010 WL 1287080 (Mar. 31, 2010).

Accordingly, the midpoint for plaintiff's NYLL overtime, minimum wage, and spread of hours

32

claims is September 26, 2010. The Court respectfully recommends that plaintiff be awarded pre-judgment interest of nine percent per year from the following date September 26, 2010, until judgment is entered. As of July 9, 2013, pre-judgment interest has amounted to $2,618.09.

    5) Post-Judgment Interest

    Plaintiff also seeks an award of post-judgment interest in his Complaint (Compl. ¶ B), and in his Motion for Default. (Pl.'s Mot. at 9). Section 1961(a) states that

> Interest shall be allowed on any money judgment in a civil case recovered in a district court . . . [s]uch interest shall be calculated from the date of the entry of judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment

28 U.S.C. § 1961(a). Moreover, "[i]nterest shall be computed daily." §1961(b). The Second Circuit has held that an award of post-judgment interest is "mandatory," and should be awarded at the statutory rate prescribed by section 1961. Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008) (citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100 (2d Cir. 2004)); Murphy v. Snyder, No. 10 CV 1513, 2012 WL 4483025, at *5 (E.D.N.Y. Mar. 28, 2012). Accordingly, the Court respectfully recommends that plaintiff be awarded post-judgment interest as well.


CONCLUSION

    In summary, the Court respectfully recommends that judgment be entered against defendant on plaintiff's FLSA and NYLL claims. The Court also respectfully recommends that plaintiff be awarded $5,665.00 in minimum wage pay, $12,163.89 in overtime pay, and an additional $17,828.89 in liquidated damages as a result of defendant's willful failure to pay overtime and minimum wages pursuant to the FLSA. As for plaintiff's NYLL minimum wage,

overtime, pre-judgment interest, and spread of hours claims, the Court respectfully recommends that the plaintiff be awarded $2,873.00 in minimum wage pay, $6,316.99 in overtime pay, $1,251.45 in spread of hours pay, an additional $1,663.85 in liquidated damages as a result of defendant's willful failure to pay wages owed, and $2,618.09 in pre-judgment interest that has accrued from September 26, 2010 to the date of this Report & Recommendation. In total, the Court recommends an award of $50,381.16, plus pre-judgment interest that accrues through the entry of final judgment in this matter, as well as any post-judgment interest that accrues after final judgment is entered.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b); Small v. Secretary of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to mail copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.


**SO ORDERED**.
Dated: Brooklyn, New York
     July 9, 2013

                                    Cheryl L. Pollak
                                    United States Magistrate Judge
                                    Eastern District of New York